1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SALLY Z. RAMOS,                              No.  2:18-CV-0060-DMC

12                    Plaintiff,

13         v.                                     MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18         Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties (ECF Nos. 6 and 9), this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22   U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits (ECF Nos. 17 and

23   20).

24         The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence. See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14         For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16              **I.  THE DISABILITY EVALUATION PROCESS**

17         To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§

19  404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

20
21        Step 1      Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

22
23        Step 2      If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

24

25        Step 3      If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

26

27

28    / / /

Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on February 25, 2014.  <u>See</u> CAR 15.[1] In the application, plaintiff claims disability began on April 1, 2000.  <u>See id.</u>  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 15, 2016, before Administrative Law Judge (ALJ) Sheila Walters.  In a March 22, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): multiple sclerosis with non-active plaque lesions in cervical and thoracic spine, degenerative disc disease lumbar spine, hypertension, mood disorder, and borderline intellectual functioning;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: less than the full range of light work; the claimant is able to lift and carry ten pounds frequently and twenty pounds occasionally, sit for about six hours and stand and/or walk for about six hours of an eight-hour workday; she is precluded from climbing ladders, ropes, or scaffolds, and is limited to occasional climbing ramps and stairs; the claimant is precluded from working around unprotected heights and hazardous machinery; she is precluded from work requiring her to walk on uneven terrain; the claimant is limited to occasional balancing, stooping, kneeling, crouching, and crawling; she is to avoid concentrated exposure to extreme heat and sunlight and should avoid even moderate exposure to extreme cold; the claimant is able to perform simple repetitive tasks;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

<u>See id.</u> at 17-28.

After the Appeals Council declined review on November 7, 2017, this appeal followed.

/ / /

/ / /

/ / /

---

[1]     Citations are the to the Certified Administrative Record (CAR) lodged on January 9, 2019 (ECF No. 12).

### III.  DISCUSSION

In her brief, plaintiff argues: (1) the ALJ improperly rejected the opinions of her treating physicians, Dr. Lorenzo Aguilar and Dr. Nang Htun, consultative psychological examiner, Dr. J. Zhang, and consultative physical examiners, Dr. Robert Tang and Dr. Samuel Rush; (2) the ALJ improperly rejected her statements and testimony as not credible; (3) the ALJ improperly rejected lay witness evidence from plaintiff's friends, Connie Martinez and Mary Arroyo; and (4) the ALJ's vocational findings at Step 5 are not supported by substantial evidence.

### A.    Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

1   when opinions from "other sources" may be considered acceptable medical opinions).

2          The weight given to medical opinions depends in part on whether they are

3   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

4   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

5   professional, who has a greater opportunity to know and observe the patient as an individual, than

6   the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

7   Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

8   opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

9   Cir. 1990).

10          In addition to considering its source, to evaluate whether the Commissioner

11   properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

12   the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

13   uncontradicted opinion of a treating or examining medical professional only for "clear and

14   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

15   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

16   by an examining professional's opinion which is supported by different independent clinical

17   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

18   1041 (9th Cir. 1995).

19          A contradicted opinion of a treating or examining professional may be rejected

20   only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

21   at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

22   facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

23   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

24   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

25   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

26   without other evidence, is insufficient to reject the opinion of a treating or examining

27   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

28   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); <u>see</u>

2   <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.

3                   At Step 4, the ALJ evaluated the medical opinion evidence of record.  <u>See</u> CAR

4   24-26.  Specifically, the ALJ discussed the following evidence:

5           Exhibits 1A, 2A, 4A   Summary reports provided by agency reviewing
                                  physicians.  <u>See</u> CAR 26.
6

7           Exhibit 4F            Medical source statement dated February 19, 2014,
                                  provided by treating physician, Dr. Lorenzo Aguilar.
8                                 <u>See</u> CAR 25.

9           Exhibit 5F            Report of May 8, 2014, consultative psychological
                                  examination performed by Dr. J. Zhang.  <u>See</u> CAR 26.

10          Exhibit 6F            Report of a May 14, 2014, consultative internal
                                  medicine examination performed by Dr. Robert Tang.
11                                <u>See</u> CAR 24.

12          Exhibit 7F            Report of a January 23, 2015, consultative internal
                                  medicine examination performed by Dr. Samuel Rush.
13                                <u>See</u> CAR 24.

14          Exhibit 13F           Medical Source Statement dated November 15, 2016,
                                  provided by treating physician, Dr. Nang Htun.
15                                <u>See</u> CAR 25.

16          Exhibit 14F           Medical source statement dated November 11, 2016.
                                  <u>See</u> CAR 25.
17

18  Plaintiff contends the ALJ erred with respect to his analysis of the opinions offered by Drs.

19  Aguilar (Exhibit 4F), Zhang (Exhibit 5F), Tang (Exhibit 6F), Rush (Exhibit 7F), and Htun

20  (Exhibit 13F).[2]

21                   1.   <u>Dr. Aguilar</u>

22                   Regarding Dr. Aguilar, a treating source, the ALJ stated:

23          . . .The doctor states that the claimant could rarely lift or carry 10 pounds,
            could stand or walk less than one hour, and sit for six hours.  She did not
24          require a cane or other assistive device.  The claimant needed to elevate
            her legs for 20% of the workday.  She could never hold her head up and
25          rarely look up and down.  She needed to walk around every hour for about
            five minute[s], and needed six to eight unscheduled rest breaks for about
26          10 minutes during the workday.  The claimant could never climb ladders

27          ───────────────
            [2]      Plaintiff makes no argument regarding the ALJ's analysis of the reviewing
28  doctors' reports at Exhibits 1A, 2A, and 4A, or the November 11, 2017, medical source
    statement, all of which the ALJ gave little weight.  <u>See</u> CAR 25, 26.

and stairs, and rarely twist, stoop, or crouch.  The claimant would likely be absent more than four days a month [Exhibit 4F].  The undersigned gives this opinion little weight.  The treatment record shows few examinations by this doctor, and the limitations are not supported by objective medical findings or clinical observations.

CAR 25.

Plaintiff contends:

> The ALJ gave little weight to Dr. Aguilar's opinion, asserting "The treatment record shows few examinations by this doctor, and the limitations are not supported by objective medical findings or clinical observations." (Tr. 25.) Contrary to the ALJ's assertions, Dr. Aguilar's treatment records do show diagnoses including multiple sclerosis, depression with anxiety, paresthesias/skin disturbance, and disturbances of vision. (Tr. 418.) Dr. Aguilar's medical source statement indicates he began treating Ramos in July 2010 and saw her every 6 months. (Tr. 430.) This frequency of treatment gave Dr. Aguilar far greater contact with Ramos and a better opportunity to observe her longitudinal condition than either of the physical consultative examiners or the non-examining state agency reviewing doctors. . . .The ALJ failed to provide clear and convincing or even specific and legitimate reasons for discounting this treating doctor's opinion, which if credited establishes disability.

ECF No. 17, pg. 14.


In response, defendant argues:

> The ALJ accorded little weight to the opinion of Dr. Aguilar, explaining that the record showed few examinations by Dr. Aguilar, and the limitations in his opinion were not supported by objective medical findings or clinical observations (AR 25). Likewise, the ALJ accorded little weight to the opinion of primary care practitioner Dr. Htun, explaining that examination and treatment records did not support the limitations opined, as almost all examination findings were normal and showed that Plaintiff was stable on medications (AR 25). Moreover, the ALJ noted that there was little objective evidence to show that Plaintiff actually had a stroke, as reported by Dr. Htun (AR 25, 76, 137 ("no abnormalities on imaging studies to support the presence of a stroke"), 451 (the "possible" stroke was "not well documented"), 488 and 492 ("stroke work up was negative"), 701 and 708 (claimant was referred for "stroke like symptoms").
> Plaintiff first argues that the ALJ provided insufficient reasons for discounting Dr. Aguilar's opinion, contending that as a treating physician,[5] Dr. Aguilar provided frequent treatment and had far greater contact with Plaintiff and more opportunity to observe her longitudinal condition than either of the consultative examiners (PB 9). Plaintiff's assertion about the longitudinal relationship between Dr. Aguilar and Plaintiff finds no support in the record, nor does Plaintiff's argument that the ALJ erred in giving the opinion little weight.

/ / /

As a preliminary matter, the regulations prohibit giving controlling weight to a treating source's opinion unless the opinion is "well-supported and not inconsistent with other substantial evidence." *See* 20 C.F.R. § 416.927(c)(3). Dr. Aguilar's opinion is neither. Moreover, contrary to Plaintiff's assertion, the record does not show that Dr. Aguilar had any, let alone frequent contact with Plaintiff during the relevant period of consideration. When she went to the hospital in May 2013, Plaintiff acknowledged that she had not seen Dr. Aguilar in six months (AR 510). While hospitalized, Plaintiff was instructed to follow up with Dr. Aguilar (AR 508). The record shows that Plaintiff met with Dr. Aguilar in June 2013 for an EEG study, which was normal (AR 417-18). Aside from this single treatment record that predates the relevant period of consideration, the record is devoid of any evidence documenting subsequent treatment with Dr. Aguilar, with no treatment after she filed for SSI in 2014.

Plaintiff counters that "contrary to the ALJ's assertions," Dr. Aguilar's treatment records "show diagnoses including multiple sclerosis, depression with anxiety, paresthesias/skin disturbance, and disturbances of vision" (PB 9). Although Plaintiff's previous diagnoses were listed on the June 2013 treatment record, there are no examination findings other than the normal EEG results (417-18). Nor does the single treatment record document any complaints or show any basis for the limitations in the opinion (AR 417-18). For example, Dr. Aguilar opined that Plaintiff could never hold her head in a static position, rarely look up or down, and occasionally turn her head to the right or left, which is curious, given Plaintiff's ability to drive without restriction (AR 432). Plaintiff's contention that treatment records support the opinion fails.

ECF No. 20, pgs. 24-25.

The Court's analysis begins with a review of Dr. Aguilar's records.  See CAR 415-18 (Exhibit 1F), 419-24 (Exhibit 2F), and 430-33 (Exhibit 4F).  Exhibit 1F consists of a progress notes following a June 18, 2013, office visit.  See id. at 415-18.  Plaintiff was seen at the time for an EEG study.  See id.  Dr. Aguilar noted: "This is a normal aware and sleep EEG."  Id. at 417.  Dr. Aguilar concluded that "no other neurologic workup needed for now."  Id. at 418.  Exhibit 2F is a duplicate record.  See id. at 419-24.

Exhibit 4F is a medical source statement completed by Dr. Aguilar on February 19, 2014, containing the doctor's opinions in this case.  See id. at 430-33.  The document is a check-the-box style form.  See id.  Dr. Aguilar noted little by way of objective clinical findings to support his opinions.  See id.  When asked to identify supporting clinical findings and objective signs, Dr. Aguilar noted: "Relapsing form of multiple sclerosis."  Id. at 430.  When asked to describe plaintiff's treatment and response, including any side effects of medication, Dr. Aguilar noted: "Advised to continue medications for condition of depression and pain."  Id.

9

On this record, the Court finds the ALJ properly considered Dr. Aguilar's opinions.  As defendant and the ALJ note, the doctor's opinions are not supported by any longitudinal treatment history.  The medical source statement contains no reference to objective findings to support Dr. Aguilar's opined extreme limitations.  To the extent Dr. Aguilar had the benefit of a treatment relationship with plaintiff, the Court would expect extensive treatment records outlining objective findings over time.  The record is this case is devoid of such evidence.  The record before the Court contains very little by way of treatment records and Dr. Aguilar cites no clinical findings in support of his medical source statement.  For these reasons, the Court finds that the ALJ's decision to give Dr. Aguilar's opinions little weight is both supported by substantial evidence and based on a correct application of the law.

2.  Dr. Zhang

Regarding consultative psychological examiner, Dr. Zhang, the ALJ stated:

. . .The examining doctor tested the claimant, and she scored a 67 on a Full-Scale IQ test.  The doctor diagnosed mood disorder and borderline intellectual function.  A GAF score of 63 was assigned, typical of individuals who have mild limitation or some difficulty in social and occupational functioning, but generally functioning pretty well.  The doctor stated that the claimant had moderate limitation in the ability to maintain consistent attendance and perform routine work duties.  However, she had no limitation in the ability to handle simple one or two-step work instructions, and only mild limitation in the ability to handle detailed and complex tasks.  The claimant had only mild limitation in the ability to work around others [Exhibit 5F].  The undersigned gives substantial weight to the opinion of the State agency consultative examiner, except that after consideration of all the medical evidence and interpreting medical evidence in light most favorable to the claimant, she should be limited to work involving simple tasks.  The claimant has borderline intellectual functioning and the doctor stated she had moderate limitation in the ability to maintain concentration, persistence, and pace, which would reasonably limit an individual's ability to perform detailed and complex tasks, requiring focus and concentration.

CAR 26.

Plaintiff essentially argues the ALJ impermissibly cherry-picked from Dr. Zhang's opinions while purporting to give all of them "substantial weight."  According to plaintiff:

. . . The ALJ purported to give substantial weight to Dr. Zhang's opinion, asserting she was accounting for the moderate limitation in concentration, persistence, and pace by including in the RFC finding a limitation to simple tasks. (Tr. 26.) However, the ALJ failed to account for the moderate limitation in maintaining consistent attendance and

10

performing routine work duties. Ramos submits that since the ALJ accounted for the moderate limitation in maintaining concentration, persistence, and pace in the RFC finding, then the ALJ also should have accounted for the moderate limitation in maintaining consistent attendance and performing routine work duties in the RFC finding. The ALJ gave no reasons to reject this aspect of Dr. Zhang's opinion. . . . The ALJ erred in including some of the moderate limitations Dr. Zhang assessed in the RFC finding but omitting others without providing an explanation. When properly considered and presented to the VE, the moderate limitation Dr. Zhang assessed in maintaining consistent attendance would appear to establish disability.

ECF No. 17, pg. 15.

Plaintiff's argument is unpersuasive for the simple reason that the ALJ accounted for moderate limitations in maintaining concentration, persistence, and pace in concluding that plaintiff should be limited to simple tasks.  As the ALJ noted, plaintiff's moderate limitations in concentration, persistence, and pace adversely affect her ability to perform tasks requiring focus. See CAR 26.  Where plaintiff sees the ALJ rejecting Dr. Zhang's opinion, the record reflects that the ALJ actually accepted the doctor's opinion that plaintiff has moderate impairments with respect to concentration, persistence, and pace.

　　　　　　　　3.　　　Drs. Tang and Rush

As to opinions rendered by consultative internal medicine examiner, Dr. Tang, the ALJ stated:

. . .The examining doctor diagnosed MS and hypertension with no end organ disease.  On examination, the claimant had good range of motion, 5/5 motor strength and muscle bulk and tone, in all four extremities and grips, and straight leg raise test was negative.  Her gait was normal and she could tandem walk, but the doctor stated that she appeared deconditioned or had some MS issues with tandem walk.  Otherwise, all tests were within normal expectation.  The doctor stated that the claimant could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for six hours, and sit without limitation.  She could occasionally climb, balance, stoop, and frequently crouch and crawl.  The claimant should avoid working at heights or around heavy machinery [Exhibit 6F]. The undersigned gives considerable weight to this opinion, as it was based on a thorough examination and evaluation.  However, additional limitation in climbing and other postural movements are reasonable as stated in the above residual functional capacity findings, given the medical evidence as a whole and subsequent evaluations and opinions.

CAR 24.

/ / /

11

1    Regarding consultative examiner, Dr. Rush, the ALJ stated:

2            . . .The doctor diagnosed MS, situational depression, and possible recent
             stroke by report but "not well documented." The doctor stated that the
3            claimant could perform light work, stand and walk slowly for six hours,
             and should avoid walking on uneven terrain. She should not climb
4            ladders, but could do simple grasp, push, pull, and gross manipulation
             [Exhibit 7F]. The undersigned accepts the suggested walking and
5            climbing limitations, and incorporates those limitations in the above
             residual functional capacity. Avoidance of concentrated exposure to
6            extreme heat and sunlight and even moderate exposure to cold are
             precautionary to avoid any flare in MS symptoms.
7
             CAR 24.
8

9            Without citation to any authority, plaintiff contends the ALJ erred in relying on the

10   opinions of Drs. Tang and Rush because ". . .these doctors examined Ramos one time and did not

11   have the same longitudinal perspective regarding her conditions that her treating doctors, Dr.

12   Aguilar and Dr. Htun, did have." ECF No. 17, pg. 16. Plaintiff's argument has no merit. The

13   opinions of an examining professional are considered substantial evidence. See Tonapetyan, 224

14   F.3d at 1149.

15           4.      Dr. Htun

16           As to Dr. Htun, a treating source, the ALJ stated:

17           . . .The doctor listed the claimant's impairments as MS, stroke,
             hypertension, and memory impairment. In assessing the claimant's
18           functional capacity, the doctor stated that the claimant could lift and carry
             20 pounds rarely, 10 pounds less than frequently, stand walk, and sit one
19           hour each during a normal eight-hour workday. The claimant could
             perform manipulative activities 20% of a workday, and must avoid
20           concentrated exposure to wetness, humidity, noise, fumes, odors, dusts,
             gases, poor ventilation, hazards, and must avoid moderate exposure to
21           extreme cold and heat. The doctor stated that the claimant had bilateral
             hand grip with reduced strength 4/5, paresthesia, and adverse side effects
22           of medication, along with muscle weakness and chronic fatigue. The
             claimant required five or six unscheduled rest breaks per day for at least
23           30 minutes. She would likely be absent four days a month. Emotional
             factors contributed to the severity of symptoms and functional limitations,
24           and her symptoms would frequently interfere with attention and
             concentration needed for even simple work tasks [Exhibit 13F]. The
25           undersigned gives little weight to this opinion even though it is from a
             treating doctor. The examination and treatment records do not support the
26           limitations suggested, as almost all examination findings were normal and
             the claimant has remained stable on medication. Also, there is little
27           objective evidence to show that the claimant actually had a stroke.

28           CAR 25.

                                                    12

1   According to plaintiff: "The ALJ did not provide specific reasons or specific

2   citations to the record to support her rejection of any specific aspect of Dr. Htun's opinion."  ECF

3   No. 17, pg. 16.  Plaintiff adds:

4           . . . The ALJ erred in failing to cite specific evidence to support her
        rejection of any of the specific limitations Dr. Htun described, stating only
5       in general terms that the entirety of the treatment notes and objective
        records (there are over 1000 pages of medical records here) were
6       inconsistent. Such a generalization does not allow this court to properly
        review the ALJ's reasoning. When Dr. Htun's opinion is properly
7       considered, it establishes that Ramos is disabled.

8       Id. at 17.

9   Plaintiff does not cite to any portions of Dr. Htun's treatment records which contradict the ALJ's

10  conclusion or support her own.

11  In opposition, defendant argues:

12          Plaintiff next contends that the ALJ did not provide specific
        reasons to reject Dr. Htun's opinion (PB 11-12). Although treating
13      physician opinions are generally accorded greater weight in the disability
        determination process, see Sprague v. Bowen, 812 F.2d 1226, 1230 (9th
14      Cir. 1987), as discussed above, they do not automatically control. An ALJ
        may accord a treating physician's opinion controlling weight only when it
15      is well-supported by medically acceptable clinical and laboratory
        diagnostic techniques and not inconsistent with other substantial evidence
16      of record. 20 C.F.R. § 416.927(c)(2). The ALJ acknowledged Dr. Htun's
        status as a treating physician, but accorded his opinion little weight
17      because it was not supported by examination and treatment records, and
        was contrary to objective evidence (AR 25, 1423-26). These are
18      appropriate reasons for discounting a treating physician's opinion. See
        Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2005) ("an ALJ may
19      discredit treating physicians' opinions that are conclusory, brief, and
        unsupported by the record as a whole . . . or by objective medical
20      findings"); Connett v. Barnhart, 340 F.,3d 871, 875 (9th Cir. 2003)
        (treating physician's opinion properly rejected where physician's records
21      "provide no basis for the functional restrictions" opined therein).

22  ECF No. 20, pg. 26.

23          Notwithstanding plaintiff's concern, the Court has been able to review the ALJ's

24  reasoning in light of the available medical record which shows, as the ALJ noted, "almost all

25  examination findings were normal and the claimant has remained stable on medication."  CAR

26  25.  On the medical source statement completed by Dr. Htun in November 2016, see CAR 1423-

27  26 (Exhibit 13F), the doctor vaguely references mild cognitive decline, "sensory impairment,"

28  and reduced strength in support of his conclusions.  Despite plaintiff's assertion that Dr. Htun's

13

1    opinions are supported by an extensive treatment history, neither plaintiff nor Dr. Htun cite to any

2    specific clinical objective findings which would support the extreme limitations opined by the

3    doctor.  The ALJ's reference to a lack of clinical findings is both supported by the record and

4    based on proper law.

5          **B.**     **<u>Credibility</u>**

6            The Commissioner determines whether a disability applicant is credible, and the

7    court defers to the Commissioner's discretion if the Commissioner used the proper process and

8    provided proper reasons.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

9    credibility finding must be supported by specific, cogent reasons.  See <u>Rashad v. Sullivan</u>, 903

10   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See <u>Lester v. Chater</u>, 81 F.3d

11   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

12   and what evidence undermines the testimony.  <u>See id.</u>  Moreover, unless there is affirmative

13   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

14   credible must be "clear and convincing."  <u>See id.</u>; <u>see also</u> <u>Carmickle v. Commissioner</u>, 533 F.3d

15   1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007),

16   and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

17           If there is objective medical evidence of an underlying impairment, the

18   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

19   because they are unsupported by objective medical evidence.  See <u>Bunnell v. Sullivan</u>, 947 F.2d

20   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

21
22   > The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
23
24
25   > 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

26

27   / / /

28   / / /

1    The Commissioner may, however, consider the nature of the symptoms alleged,

2  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3  947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

4  claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

5  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

6  prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

7  physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8  Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9  claimant cooperated during physical examinations or provided conflicting statements concerning

10  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11  claimant testifies as to symptoms greater than would normally be produced by a given

12  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14    At Step 4, the ALJ engaged in a detailed analysis of plaintiff's statements and

15  testimony.  See CAR 21-24.  The ALJ began by summarizing this evidence as follows:

16    The claimant was born February 18, 1967, and has a high school
      education.  She drives her daughter to school three times a week, and

17    drove herself to the hearing.  The claimant testified that she does some
      household chores, including laundry, but gets help from her spouse and

18    daughter.  She cooks about once a week.  The claimant stated her pain and
      other symptoms also depend on the weather.  She stated that she is unable

19    to work because taking care of herself is a job.  She would be unable to
      keep a work schedule, and writes numbers backward.  She has pain in her

20    back, limbs, and legs.  The claimant testified that she has multiple
      sclerosis (MS) and MS related arthritis.  MS was confirmed by a grain MR

21    and in 2013, the claimant may have had a stroke.  The claimant stated she
      was in a motor vehicle accident in 2013, all of which has increased her

22    symptoms.  The claimant stated she also has high blood pressure, chronic
      sinus infections, fatigue, heartburn caused by a hernia, and dizziness.  She

23    takes multiple medications, which do not adequately control her
      symptoms.  The claimant estimated that she is able to walk about 10

24    minutes, for two blocks, sit about five minutes, and lift about five pounds.
      She is left handed.

25
      The claimant testified that she has carpal tunnel syndrome, problems with

26    depression, memory, and problems with her vision.  She gets along with
      her family, friends, and neighbors, but does not like to be around more

27    than about five people at a time.

28  / / /

15

In addition to the claimant's testimony, the undersigned has considered all other statements submitted in support of the claimant's application.

In a Function Report dated April 9, 2014, the claimant described being very limited in any movement and physical functioning, with pain and numbness throughout her body. Medications caused her to have an upset stomach and poor appetite. The claimant stated she spent a lot of time lying down. She did not drive at night, as she could not tolerate lights, so she drove only when necessary. The claimant stated she had difficulty with memory, concentration, and completing tasks [Exhibit 2E].

* * *

A Disability Report Appeals was completed September 16, 2014. The claimant stated her right hand locked in a bent position, and she needed to use her left hand to peel her fingers back in an upright position to have full hand use. Her hands were very painful, and osteoporosis was worse. The claimant was taking hydrocodone and Norco, three or four per day. Pain made breathing difficult, especially arthritis in her hands and joints. It was hard for her to comb her hair, get dressed, and grab anything. She could only use her thumbs and adjacent fingers. Her left hand and side were most affected by multiple sclerosis symptoms [Exhibit 8E].

Another Function Report was completed November 24, 2014, largely duplicating the statements in the earlier function report [Exhibit 10E]. . . .

A final Disability Report Appeals was completed May 15, 2015. The claimant stated that she had a stroke on Christmas Eve. She moved much slower and was barely get [sic] to do things herself. She used a walker to [] around her home, especially in the mornings. Depression was worse and she was in a motor vehicle accident on March 15, 2015. She sustained neck and back injuries. The claimant stated she had spinal stenosis and required high doses of aspirin and pain medications. She needed help with her personal hygiene and could not cook meals. She had problems with both hands, especially her left hand, and would drop objects. . . [Exhibit 15E].

CAR 21-22.

The ALJ found plaintiff's testimony and statements, as well as the lay witness statements discussed below, not fully credible because they are "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 22. The ALJ then stated:

. . .As to physical limitations, the claimant is able to move about with relative ease, do household chores, occasionally cook and drive an automobile, and the medical treatment record along with clinical findings by the State agency consultative examiners shows that the claimant is much less limited in her ability to function than she alleges. Medications have been effective in controlling her symptoms. In January 2014, the claimant was taking Gabapentin for pain, but stopped it because she

16

thought it made her gain weight.  She was prescribed Vicodin which controlled symptoms and no negative side effects were reported [Exhibit 3F, 10F].

The claimant was diagnosed with multiple sclerosis, with detected non-active plaque lesions in the cervical and thoracic spine [Exhibit 11F240]. The claimant was admitted to a hospital on May 2, 2013, complaining of left side paresthesia, with visual deficit of "blurred vision."  Her symptoms started two weeks earlier when the weather started changing.  A discharge diagnosis dated May 4, 2013, stated that there was the presence of interval tiny lesion extension in a subcortical lesion and that the claimant reported vision deficit.  She was treated with IV steroids and improved [Exhibit 11F2].  An MRI obtained on May 4, 2013, confirmed a tiny non-active MS plaque lesion involving the posterior pontomedullary junction, and suspected MS plaque lesion, non-active at the cervical medullary junction.  The claimant was prescribed Gilenya 0.5 mg daily and advised to void increased internal and ambient body heat, and exhaustion [Exhibit 11F3].  An EEG study obtained in June 2013 was normal, with no significant epileptogenic focus or electrographic seizure detected [Exhibit 1F].

The claimant experienced a flare of MS symptoms and was hospitalized from December 24, 2014, to December 28, 2014.  She complained primarily of right-sided weakness and slurred speech.  A brain MRI showed multiple infarcts in different areas of the pons and cerebrum, but an echocardiogram was negative for any course of emboli [Exhibit 11F186].  The medical record has very little evidence of evaluation, workup, or objective testing to confirm that the claimant had a stroke as alleged, and she had not received ongoing treatment for any brain injury or accident.  The discharge summary stated there was no demyelinating foci, and that the claimant had presumed non-active MS plaque lesions at C3-C4, C7-T1, and stable presumed MS plaques at the cervical medullary and pontomedullary junctions [Exhibit 11F258].  After discharge, the claimant had significant physical therapy.  At an examination on January 9, 2015, the findings were all normal, with no edema or other problems.  Strength was 5/5 bilaterally in both upper and lower extremities, and the claimant had an even gait [Exhibit 8F3].  At a more recent examination on March 30, 2016, the claimant was found to be stable on medication.  The treatment record states that the claimant denied any problems with MS.  A prior problem with balance was improved and stable with the medication Ampyra, and fatigue was improved with Nuvigil [Exhibit 12F81-82]. When examined on May 4, 2016, the claimant demonstrated normal gait and balance [Exhibit 12F107] and again in October 2016, there was no indication of relapse in MS symptoms [Exhibit 12F131, 134].  While the claimant may have some fatigue attributable to MS, her symptoms appear to be stable and controlled with medications.  Any functional limitations have been accommodated for in the above residual functional capacity finding.

CAR 22-23.

/ / /

/ / /

1    Regarding plaintiff's alleged stroke, the ALJ stated that "[t]he record does not

2    show ongoing treatment for this condition or record of symptoms that would indicate this

3    condition has caused any functional limitation."  CAR 24.  As to a car accident in March 2015,

4    the ALJ added:

5          The claimant was involved in a motor vehicle accident in March 2015, and
           complained of neck, rib, and knee pain.  She was medically examined, and
6          there were no positive findings, other than some decrease in right knee
           flexion because of pain and some tenderness along the cervical spine.  A
7          brain CT was normal, and x-rays of the cervical, thoracic, and lumbar
           spine, and right knee were all normal with no indication of fracture of
8          other defect or deformity [Exhibit 12F1-3].

9          Id.

10   Plaintiff argues the ALJ's credibility finding is flawed in two ways.  First, plaintiff

11   asserts the ALJ improperly relied on her daily activities.  Second, plaintiff contends the ALJ

12   failed to link the cited medical evidence to specific testimony or statements found not to be

13   credible.

14          1.    Daily Activities

15   Regarding reliance on a claimant's daily activities to find testimony of disabling

16   pain not credible, the Social Security Act does not require that disability claimants be utterly

17   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

18   repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

19   does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

20   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

21   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

22   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

23   restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

24   claimant was entitled to benefits based on constant leg and back pain despite the claimant's

25   ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

26   activities are not easily transferable to what may be the more grueling environment of the

27   workplace, where it might be impossible to periodically rest or take medication").  Daily

28   activities must be such that they show that the claimant is ". . .able to spend a substantial part of

18

1   his day engaged in pursuits involving the performance of physical functions that are transferable

2   to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

3   before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

4   Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

5       Citing Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014), plaintiff contends:

6           Here, Ramos's medically determinable impairments could
7       reasonably be expected to cause the alleged symptoms, and the ALJ made
        no finding of malingering based on affirmative evidence thereof, nor does
8       the record support such a finding. Accordingly, at the second step of the
        credibility analysis, the ALJ was required to make specific, clear, and
9       convincing findings to support her rejection of Ramos's testimony. Here,
        the ALJ asserted Ramos's testimony was less than fully credible because
10      the ALJ asserted the objective medical evidence was inconsistent with the
        limitations Ramos described. The ALJ asserted Ramos was "able to move
11      about with relative ease, do household chores, occasionally cook and drive
        an automobile, and the medical treatment record along with clinical
12      findings by the State agency consultative examiners shows that the
        claimant is much less limited in her ability to function than she alleges.
13      Medications have been effective in controlling her symptoms." (Tr. 22.)
        Contrary to the ALJ's assertions, Ramos's ability to perform activities of
14      daily living, such as driving, cooking, and doing a few household chores,
        is not inconsistent with disability or with the limitations Ramos described
15      in her testimony. . . .
            Here, Ramos explained she has a couple of hours each day when
16      she can do some light chores around the house or cook a meal, but she
        spends most of the rest of the time lying down because of her fatigue and
17      pain. (Tr. 79-86.) And as discussed above regarding the medical evidence,
        Ramos also has mental impairments which cause difficulty with
18      concentration and remembering instructions. The activities listed by the
        ALJ do not show abilities in excess of what Ramos described in her
19      testimony. Ramos freely admits she can do a few activities for an hour or
        two in a typical day, but this does not show an ability to sustain such
20      activity for a full 8-hour work day or 40-hour work week as required to
        perform full-time work.

21      ECF No. 17, pgs. 18-19.

22      Defendant argues:

23          Plaintiff . . . argues that the ALJ consistency analysis was flawed
        because her activities of daily living are not inconsistent with disability or
24      her own testimony (PB 13-14). The ALJ did not state that Plaintiff's daily
        activities, standing alone, prove Plaintiff's ability to sustain full-time work
25      activity. Rather, the ALJ observed that Plaintiff's activities suggested she
        was not as limited as she claimed to be (AR 22).
26
27      ECF No. 20, pg. 20.

28   ///

19

1          The Court agrees with both parties.  Plaintiff is correct that the ALJ's references to

2    her limited daily activities do not show an ability to engage in sustained work activity.

3    Defendant, however, is also correct that the ALJ did not rely solely on plaintiff's daily activities

4    to find the entirety of her subjective statements not credible.  As defendant notes, the ALJ <u>also</u>

5    relied on inconsistency with the medical evidence (discussed below) as well as evidence that

6    plaintiff's condition is well-controlled with medication.  <u>See</u> CAR 22-23.

7          2.   <u>Medical Evidence</u>

8          Citing <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487 (9th Cir. 2015, plaintiff also argues:

9
10         The ALJ cites the objective medical evidence as inconsistent with Ramos's testimony, but identifies no specific records contrary to any of Ramos's specific statements regarding her limitations. . . .

11         Here, the ALJ has not specified which testimony she found not credible and has not provided clear and convincing reasons supported by evidence in the record to support her credibility determination. Medication

12   may have helped control some of Ramos's pain, but medication has not alleviated her fatigue, and in fact probably contributes to additional fatigue

13   for Ramos.

14         ECF No. 17, pgs. 19-20.

15         Plaintiff's argument is unconvincing.  While the ALJ did not strictly link each item

16   of objective evidence discussed with specific testimony found not to be credible, the ALJ's

17   decision nonetheless reflects that the ALJ found all of plaintiff's testimony not credible given the

18   lack of supporting objective evidence as a whole.  The ALJ then discussed the objective evidence

19   in detail.  The Commissioner must identify which testimony is not credible and the evidence

20   supporting the conclusion.  Here, the ALJ found all of plaintiff's testimony not credible based on

21   the objective evidence.  The Court finds the ALJ has met the Commissioner's burden.  Plaintiff's

22   argument would have more merit had the ALJ accepted some of plaintiff's testimony and rejected

23   other parts of her testimony.  In such a situation, the Court would indeed expect an analysis

24   specific to those portions of the testimony found not to be credible.  In this case, however, the

25   ALJ found <u>all</u> of plaintiff's testimony not credible based on specific items of objective evidence.

26   / / /

27   / / /

28   / / /

1       **C.**    <u>**Lay Witness Evidence**</u>

2               In determining whether a claimant is disabled, an ALJ generally must consider lay

3 witness testimony concerning a claimant's ability to work.  <u>See</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915,

4 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

5 testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

6 evidence . . . and therefore cannot be disregarded without comment."  <u>See</u> <u>Nguyen v. Chater</u>, 100

7 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

8 lay witnesses, he must give reasons that are germane to each witness."  <u>Dodrill</u>, 12 F.3d at 919.

9 When rejecting third party statements which are similar in nature to the statements of plaintiff, the

10 ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  <u>See</u>

11 <u>Valentine v. Commissioner Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (approving

12 rejection of a third-party family member's testimony, which was similar to the claimant's, for the

13 same reasons given for rejection of the claimant's complaints).

14               At Step 4, the ALJ evaluated lay witness evidence provided by plaintiff's friends,

15 Connie Martinez and Mary Arroyo.  <u>See</u> CAR 22.  The ALJ stated:

16
17       Connie Martinez, a friend of the claimant, submitted a Third Party
Function [Report] dated April 9, 2014.  Ms. Martinez states she saw the
claimant weekly for two or three hours, as they did what she described as
18       door-to-door "field services work (ministry)."  Ms. Martinez otherwise
repeated many of the claimant's allegations in her Function Report
19       [Exhibit 3E].

20               * * *

21       . . .A Third Party Function Report was completed November 23, 2014, by
Mary Arroyo, a friend of the claimant.  Ms. Arroyo repeated statements
22       made in prior function reports [Exhibits 14E, 12E, 13E].

23       <u>Id.</u>

24 As with plaintiff's subjective statements and testimony, the ALJ rejected the lay witness evidence

25 as "not entirely consistent with the medical evidence and other evidence in the record for the

26 reasons explained in this decision."  <u>Id.</u>

27 / / /

28 / / /

1    Plaintiff argues: "To the extent the ALJ rejected the testimony of the lay witnesses

2  based on the same rationale the ALJ relied on to discount Ramos's own testimony, the ALJ

3  erred." CAR 17, pg. 16.  According to plaintiff, the ALJ's underlying credibility determination is

4  flawed and, for this reason, the ALJ may not rely on that analysis to reject the lay witness

5  evidence.   This argument is unpersuasive because, for the reasons discussed above, the Court

6  finds no fatal error in the ALJ's credibility analysis.  Consistent with <u>Valentine</u>, the ALJ properly

7  rejected lay witness evidence for the same reasons cited for rejecting plaintiff's own subjective

8  statements and testimony.

9    **D.**    **<u>Vocational Findings</u>**

10    At Step 5, the ALJ determined that plaintiff is not disabled because she can

11  perform other jobs that exist in the national economy.  <u>See</u> CAR 27.  Plaintiff argues the ALJ's

12  vocational finding is flawed in three ways.  First, plaintiff argues she is presumptively disabled

13  under Medical-Vocation Rule 202.12 if she is limited to sedentary work.  Second, the residual

14  functional capacity found by the ALJ precludes the ability to perform one of the possible jobs

15  identified by the ALJ, cashier II, and the ALJ failed to elicit vocational expert testimony as to

16  whether other possible jobs, assembler and packing line worker, existed in significant numbers in

17  the national economy.  Finally, plaintiff asserts the ALJ relied on vocational expert testimony

18  what was not based on accurate hypothetical questions.

19    1.    <u>Medical-Vocational Rule 202.12</u>

20    The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about

21  disability for various combinations of age, education, previous work experience, and residual

22  functional capacity.  The Grids allow the Commissioner to streamline the administrative process

23  and encourage uniform treatment of claims based on the number of jobs in the national economy

24  for any given category of residual functioning capacity.  <u>See</u> <u>Heckler v. Campbell,</u> 461 U.S. 458,

25  460-62 (1983) (discussing creation and purpose of the Grids).

26  / / /

27  / / /

28  / / /

1          The Commissioner may apply the Grids in lieu of taking the testimony of a

2   vocational expert only when the Grids accurately and completely describe the claimant's abilities

3   and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

4   Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

5   Grids if a claimant suffers from non-exertional limitations because the Grids are based on

6   exertional strength factors only.[3]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

7   "If a claimant has an impairment that limits his or her ability to work without directly affecting

8   his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

9   by the Grids."  Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

10  Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

11  even when a claimant has combined exertional and non-exertional limitations, if non-exertional

12  limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

13  1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

14          Plaintiff's argument is unpersuasive because it is premised on a limitation to no

15  more than sedentary work.  As discussed above, the Court finds the ALJ committed no error with

16  respect to the residual functional capacity finding at Step 4 that plaintiff can perform a limited

17  range of light work.

18  / / /

19  / / /

20

---

21          [3]     Exertional capabilities are the primary strength activities of sitting, standing,
    walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to
22  perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart
    P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time
23  and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20
    C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at
24  a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§
    404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time
25  with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§
    404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time
26  with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§
    404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100
27  pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20
    C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory,
28  postural, manipulative, and environmental matters which do not directly affect the primary
    strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1
   2. Other Jobs

2
   The ALJ elicited vocational expert testimony as to the types of jobs someone with

3
plaintiff's residual functional capacity could perform.  See CAR 27.  The vocational expert

4
identified three jobs: cashier II, assembler, and packing line worker.  See id.  The vocational

5
expert also testified that these jobs existed in significant numbers in the national economy.  See

6
id.

7
   Plaintiff argues the cashier II job is not a valid representative job because it

8
requires a reasoning level precluded by the residual function capacity determined by the ALJ.

9
According to defendant:

10
   . . .Regardless of the skills required of the cashier II position, the
occupations of assembler and packing line worker adequately support the

11
ALJ's step five finding (AR 27). Work exists in the national economy
when "there is a significant number of jobs (in one or more occupations)"

12
that an individual with claimant's physical or mental and vocational
qualifications could perform. 20 C.F.R. § 416.966(b).

13
  ECF No. 20, pg. 28.

14

15
   The Court agrees with defendant.  Even if the ALJ erred with respect to the cashier

16
II job, the ALJ properly relied on the vocational expert's opinion that plaintiff could perform the

17
other identified jobs and that such jobs exist in significant numbers in the national economy.

18
Plaintiff makes no argument as to the other jobs.

19
   3. Hypothetical Questions

20
   In cases where the Grids are not fully applicable, the ALJ may meet his burden

21
under step five of the sequential analysis by propounding to a vocational expert hypothetical

22
questions based on medical assumptions, supported by substantial evidence, that reflect all the

23
plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

24
where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

25
non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

26
Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

27
/ / /

28
/ / /

1    Hypothetical questions posed to a vocational expert must set out all the

2    substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

3    Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

4    limitations, the expert's testimony as to jobs in the national economy the claimant can perform

5    has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

6    the ALJ may pose to the expert a range of hypothetical questions based on alternate

7    interpretations of the evidence, the hypothetical that ultimately serves as the basis for the

8    ALJ's determination must be supported by substantial evidence in the record as a whole.  See

9    Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

10    Plaintiff argues:

11    . . . Here, in posing her hypothetical questions to the vocational
       expert, the ALJ omitted Ramos's credible allegations and those of the lay
12     witnesses. The ALJ also omitted the limitations assessed by Ramos's
       treating doctors, Dr. Aguilar and Dr. Htun, and critical aspects of the
13     limitations assessed by examining doctor, Dr. Zhang, as detailed above.
       Because the VE's testimony that Ramos could perform the occupations
14     identified by the ALJ was based on the ALJ's failure accurately to pose all
       of Ramos's limitations, the VE's testimony that Ramos can perform those
15     occupations has no evidentiary value. The ALJ's decision is based on
       evidence which has no evidentiary value, and so decision is not based on
16     substantial evidence.

17    ECF No. 17, pgs. 22-23.

18    Plaintiff's argument is unconvincing because, as discussed above, the Court finds

19    no error concerning the ALJ's evaluation of the medical opinion evidence, plaintiff's own

20    statements and testimony, or the lay witness evidence.

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.      Plaintiff's motion for summary judgment (ECF No. 17) is denied;

        2.      Defendant's motion for summary judgment (ECF No. 20) is granted;

        3.      The Commissioner's final decision is affirmed; and

        4.      The Clerk of the Court is directed to enter judgment and close this file.

Dated:  May 29, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

26